**NAILAH K. BYRD**
**CUYAHOGA COUNTY CLERK OF COURTS**
**1200 Ontario Street**
**Cleveland, Ohio 44113**

## Court of Common Pleas

**New Case Electronically Filed: COMPLAINT**
**August 13, 2026 16:46**

By: SEAN SOBEL 0086905

Confirmation Nbr. 3946321

PATRICK COSTIGAN — CV 26 144657

vs.

CITY OF CLEVELAND HEIGHTS — **Judge:** CARL J. MAZZONE

**Pages Filed:** 11

IN THE COURT OF COMMON PLEAS
CUYAHOGA COUNTY, OHIO

| | | |
|---|---|---|
| PATRICK COSTIGAN<br>c/o Sobel Law Solutions, LLC<br>1468 West 9th Street, Suite 100<br>Cleveland, Ohio 44113<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CLEVELAND HEIGHTS<br>40 Severance Circle<br>Cleveland Heights, Ohio 44118<br><br>Defendant. | ) | Case No.:<br><br>Judge:<br><br>**COMPLAINT**<br>*(Jury Demand Endorsed Hereon)* |

## INTRODUCTION

1. Plaintiff Patrick Costigan is an Ohio resident.
2. Costigan is the former Special Assistant to the Mayor for the City of Cleveland Heights.
3. Costigan is an "employee" within the meaning of Chapter 4112 of the Ohio Revised Code and within the meaning of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e(f).
4. Defendant City of Cleveland Heights is a local government in the county of Cuyahoga and state of Ohio.
5. At all times material herein, Cleveland Heights was Costigan's "employer" within the meaning of R.C. § 4112.01(A)(2) and 42 U.S.C. § 2000e(b).
6. Natalie McDaniel, who is not a party to this action, is a Cuyahoga County resident and the wife of then-Mayor of Cleveland Heights, Kahlil Seren.
7. Seren publicly referred to McDaniel as the "First Lady" of Cleveland Heights, and acknowledged that she acted as his counsel and advisor.

8. McDaniel was personally involved in official Cleveland Heights business, including sitting in on numerous committee meetings and job interviews for Cleveland Heights employees and consultants.
9. Costigan was specifically ordered by Seren to follow all directives given to him by McDaniel as if they were coming directly from the Mayor.
10. Numerous other Cleveland Heights employees were instructed by Seren to follow any and all directives coming from McDaniel.
11. While not elected or officially employed by Cleveland Heights, McDaniel acted in a supervisory capacity over Costigan.
12. Cleveland Heights is liable for the conduct of McDaniel described herein because it clothed her with supervisory authority over Costigan and, after receiving notice of her conduct, failed to take any remedial action.
13. On May 15, 2025, Costigan filed a Charge of Discrimination against Cleveland Heights with the Equal Employment Opportunity Commission ("EEOC"), Charge No. 532-2025-03273, which was dual-filed with the Ohio Civil Rights Commission ("OCRC").
14. On May 18, 2026, the EEOC dismissed Costigan's Charge.
15. Costigan files this action within ninety days of his receipt of the dismissal of his Charge.
16. Costigan has exhausted all administrative remedies available to him under 42 U.S.C. § 2000e-5 and R.C. § 4112.052.
17. Costigan previously filed an action in this Court seeking injunctive relief only while his administrative remedies remained pending, and voluntarily dismissed that action without prejudice pursuant to Civ.R. 41(A) on April 9, 2026.

18. The conduct and injuries giving rise to the claims below arose in Cuyahoga County, Ohio.

19. Personal jurisdiction is proper over Defendant pursuant to R.C. § 2307.382(A)(1).

20. Venue is proper pursuant to Civ.R. 3(B)(3).

21. This Court is a court of general jurisdiction over the claims presented herein, including all subject matters of this Complaint, and exercises concurrent jurisdiction over claims arising under Title VII.

22. The amount in controversy exceeds $25,000, exclusive of interest and costs.

## FACTUAL ALLEGATIONS

23. Costigan incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

24. Costigan identifies as an ethnic Jew.

25. Costigan, on multiple occasions, discussed his Jewish heritage with McDaniel, and she was fully aware that he identified as an ethnic Jew.

26. McDaniel subjected Costigan to countless anti-Semitic remarks, orally and in writing, directed at Cleveland Heights elected officials, employees, and even a resident.

27. McDaniel made a comment to Costigan, while using what can be described as a stereotypical New York Jewish accent, that "black people don't grow up with generational wealth and things like a Jewish accountant," when discussing new state legislation that would charge interested parties for police body camera footage.

28. McDaniel made numerous comments about City Council's desire to recruit a "Jewish candidate" to fill an open council seat, and also referred to now-council member Jim Posch multiple times as the "Jewish candidate" the majority of council wanted.

29. McDaniel also made derogatory statements about former council members Michael Ungar and Jason Stein, who are both Jewish, and how they put their allegiance to the Orthodox Jewish community in Cleveland Heights above all else.
30. McDaniel, again in Costigan's presence, referred to Marty Gelfand as "one of them," meaning that Gelfand was being recruited to run against Seren because Gelfand is Jewish.
31. She also referred to Eric Zamft, the City's Planning and Economic Development Director and an Orthodox Jew, as a "pawn" of the Orthodox community and accused him and the City's Planning Commission Chair, Jessica Cohen, of "fucking each other" simply because they are both Orthodox Jews.
32. McDaniel made Cohen the most frequent target of derogatory comments in Costigan's presence, consistently making fun of Cohen's Orthodox Jewish dresses and wigs, stating that she wanted to "rip her wig off."
33. During a Planning Commission meeting, McDaniel sent a series of text messages to Costigan and Seren using coded anti-Semitic language directed at Cohen.
34. The unedited text messages sent by McDaniel to Costigan and Seren are pictured below:

12:02 5G

< 197

2 People

Natalie

Those huge temples in "homes"

The additions on homes over off Taylor are bonkers and approved by.....

That's the REASON that bitch in on plannigg nth

Variances

This monstrous additions are illegal.

People are raked over the coals for windows that don't all match but the additions that this make legal shouldn't have been approved.

Eric doesn't need to hand this over. What is this?

He doesn't get it. Disappointing.

Vomit

She's a lawyer too. Let's continue to worship her.

Did this legislation require fluffing

+




35. In the text messages, McDaniel was upset about new legislation that would change the zoning requirements for places of worship.

36. McDaniel was clearly taking issue with the effect these new requirements would have on the Orthodox Jewish community in Cleveland Heights.

37. McDaniel stated "the additions on homes over on Taylor and bonkers and approved by…" referencing homes in a predominantly Orthodox Jewish area of Cleveland Heights and stating that Cohen, an Orthodox Jew, is approving these additions.

38. McDaniel further remarked, "That's the REASON that bitch in [sic] on planning nth [no thanks]," and is making the accusation that Cohen is on the Planning Commission simply to benefit Orthodox Jewish residents.

39. McDaniel then wrote to Costigan and Seren that "What qualifications does this brood mare have?" and "She is destined for a glue factory and the days drag on."

40. McDaniel is referring to Cohen as a "broodmare," a female horse that is kept primarily for breeding. This is coded and anti-Semitic language towards Cohen referencing the number of children in Orthodox Jewish families.

41. McDaniel would often complain to Costigan about the number of children in Cleveland Heights' Orthodox Jewish families.

42. McDaniel also directed anti-Semitic comments towards Jewish Cleveland Heights residents who would exercise their right to speak at Council meetings.

43. In one instance, an Orthodox Jewish resident who had what can be described as an East Coast Jewish accent, complained about City services.

44. McDaniel mimicked the accent on numerous occasions in Costigan's presence to make fun of the resident.

45. McDaniel also referred to a Cleveland Heights resident who frequently complained about City services as "that Jewish bitch."

46. McDaniel also approached Costigan to inquire whether the managing partner of an outside firm retained by Cleveland Heights for a development agreement for Severance Town Center was "a Jew" and whether there was an "alliance" between the managing partner and Zamft.

47. Not only did McDaniel make anti-Semitic statements to Costigan, but she also subjected him to grossly derogatory comments towards the LGBTQ community, of which Costigan is a member.

48. On numerous occasions, McDaniel referred to a Cleveland Heights council member as a "faggot" in Costigan's presence in response to an ongoing disagreement with Seren's budget proposal.

49. McDaniel even went so far as to boast to Costigan that she referred to that council member as a "faggot" to McDaniel's father in a telephone call.

50. The frequency and severity of these anti-Semitic and homophobic comments created a hostile work environment for Costigan and gave him no choice but to seek medical leave from the City.

51. On February 5, 2025, Costigan corresponded with Dan Horrigan, who was the City Administrator at the time, and cited a personal matter with McDaniel as contributing to his health issues and necessitating medical leave.

52. Cleveland Heights was therefore on notice of the conduct that had created a hostile work environment for Costigan.

53. Cleveland Heights conducted no investigation, took no corrective action, and never followed up with Costigan regarding the issues he raised concerning McDaniel.

54. Instead, on March 13, 2025, Cleveland Heights terminated Costigan's employment.

55. As a result of Cleveland Heights' unlawful conduct, Costigan has suffered lost wages and benefits, emotional distress, humiliation, damage to his professional reputation, and other compensable harm.

**FIRST CAUSE OF ACTION**
**(Hostile Work Environment in Violation of R.C. § 4112.02)**

56. Costigan incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

57. Because Costigan is an ethnic Jew, he is a member of a protected class for the purposes of R.C. § 4112.02.

58. McDaniel subjected Costigan to a hostile work environment in the form of unwelcome and offensive comments on the basis of religion and ancestry.

59. McDaniel was acting as Costigan's supervisor at the time she made numerous anti-Semitic comments to him.

60. The derogatory comments made by McDaniel to Costigan were severe and pervasive sufficient to interfere with the terms and conditions of Costigan's employment, in violation of R.C. § 4112.02.

61. Cleveland Heights knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

62. The derogatory comments made by McDaniel to Costigan led to Costigan taking leave from his position and subsequently led to the termination of his employment.

63. As a direct and proximate result of Cleveland Heights' unlawful conduct, Costigan has suffered and will continue to suffer damages.

**SECOND CAUSE OF ACTION**
**(Hostile Work Environment in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2)**

64. Costigan incorporates by reference the allegations from the preceding paragraphs as if fully re-alleged herein.

65. Title VII prohibits an employer from discriminating against any individual with respect to the terms, conditions, or privileges of employment because of that individual's religion or national origin.

66. Because Costigan is an ethnic Jew, he is a member of a protected class for the purposes of 42 U.S.C. § 2000e-2.

67. McDaniel subjected Costigan to unwelcome harassment on the basis of his religion and ancestry.

68. McDaniel was acting as Costigan's supervisor at the time she subjected him to the conduct described herein.

69. The harassment was sufficiently severe or pervasive to alter the terms and conditions of Costigan's employment and to create an abusive working environment, and Costigan subjectively perceived it as such.

70. Cleveland Heights knew or should have known of the harassment and failed to take prompt and appropriate corrective action.

71. Cleveland Heights' conduct constitutes unlawful discrimination in violation of 42 U.S.C. § 2000e-2.

72. As a direct and proximate result of Cleveland Heights' unlawful conduct, Costigan has suffered and will continue to suffer damages.

## CONCLUSION

Plaintiff Patrick Costigan seeks judgment against Defendant City of Cleveland Heights in an amount in excess of $25,000 to fully, fairly, and justly compensate him for injury, damage, and loss, and respectfully prays that this Court enter judgment in his favor and award him past and future economic and non-economic compensatory damages, back pay, front pay, lost wages and benefits, damages for emotional distress, humiliation, and injury to reputation, consequential and incidental damages, pre-judgment and post-judgment interest, all reasonable attorney's fees, costs and expenses, and any other relief that this Court may deem necessary and proper.

Respectfully submitted,

*/s/ Sean H. Sobel*
Sean H. Sobel (0086905)
Sobel Law Solutions, LLC
1468 West 9th Street, Suite 100
Cleveland, Ohio 44113
T: (216) 282-9776
sobel@sobellawsolutions.com

*Attorney for Plaintiff Patrick Costigan*

## JURY DEMAND

Plaintiff Patrick Costigan demands a trial by jury by the maximum number of jurors permitted.

*/s/ Sean H. Sobel*
Sean H. Sobel (0086905)

*Attorney for Plaintiff Patrick Costigan*